178 So. 386

Receivership of MANTERIS NO. 1 WELL.

No. 34350.

Nov. 29, 1937.

Rehearing Denied Jan. 10, 1938.

Sylvian W. Gamm, of Shreveport, for appellants Louisiana Iron & Supply Co. and others.

R. A. Fraser, of Many, for appellees J. H. Reeves and others.

O'NIELL, Chief Justice.

This appeal is from a judgment homologating the final account of a receiver of an insolvent partnership, known as Manteris No. 1 Well, formerly engaged in the drilling and operation of an oil well. The appellant is a corporation named Louisiana Iron & Supply Company, a creditor of the defunct partnership. The receiver recognized the appellant as an ordinary creditor of the partnership, for $1,967.36; and the appellant filed an opposition to the receiver's account, claiming the additional sum of $2,888.38, and claiming to be a preferred creditor for the amount of $2,015.00; but the opposition was rejected by the judgment homologating the account; and the appellant is not now complaining of the judgment in that respect. The complaint is that four other opponents of the account, whose oppositions were sustained by the judge, and who were adjudged to be preferred creditors, should be declared ordinary creditors of the insolvent partnership. The four claims complained of are: (1) The claim of the Sparco Gasoline Company for $445.05; (2) the claim of the Sabine Gas Company for $600.80; (3) the claim of J. H. Reeves for $329.75; and (4) the claim of Reeves, McNeely, and Knott, for $309.39.

The attorney for the appellees contends that the Louisiana Iron & Supply Company has no interest in contesting, and hence no right to contest, the claims of the appellees; especially because the appellant did not contest or oppose these claims in the district court. There was no occasion, in the district court, for the Louisiana Iron & Supply Company to oppose the four claims which are contested in this appeal. The receiver did not recognize these claims as preferred claims, on his final account; and he defended the oppositions that were filed by the four claimants. Hence it was not incumbent upon any creditor of the insolvent partnership to join in the defense against the claims of the four creditors, claiming to be preferred creditors. What gives the Louisiana Iron & Supply Company the right to appeal from

the judgment declaring the four appellees to be preferred creditors is the fact that the fund to be distributed by the receiver is not enough to pay all of the creditors of the insolvent concern. In fact it appears that the fund to be distributed is only $36.-45 more than the amount of the four claims that have been recognized as preferred claims, and is very much less than the sum of all of the claims against the defunct partnership. Where a fund to be distributed by a receiver or other such officer is not enough to pay all of the claims upon the fund, any ordinary creditor has the right to appeal from a judgment declaring the claim of any other of the creditors to be a preferred claim.

The claim of the Sparco Gasoline Company for $445.05 represents the price of gasoline and fuel oil sold and delivered to the receiver and used in the operation of the oil well by the receiver. A debt incurred by a receiver in carrying on the business which he is authorized to carry on, as that of a going concern, is entitled to be paid by preference over the debts of the concern itself, incurred before the receiver was appointed. The judgment appealed from, therefore, is correct in so far as it recognizes the claim of the Sparco Gasoline Company for $445.05 to be a preferred claim.

The only complaint about the claim of the Sabine Gas Company, for $600.80, is that it should be reduced to $480.64; that is, the amount which the receiver showed on his final account to be due to the gas company. The amount of the invoice for the gas used by the receiver, for fuel,

was $600.80; but the receiver would have been entitled to a discount of 20 per cent., which would have reduced the bill to $480.-64, if the receiver had paid the bill within 60 days. We assume that the receiver had no funds with which to pay the bill within the 60 days, because, in fact, the bill was nearly two years old and yet unpaid when the receiver filed his final account. It is contended by the appellant that the refusal of the gas company to allow the discount is a disguised method of charging usurious interest for the delay in the payment of the account. The answer to that is that, as far as the record shows, the charge of $600.80 was according to the market price for the gas in that locality, and the offer of the discount was a fair offer, very likely based upon the risk of losing the amount if payment should be deferred beyond 60 days. It may be possible for a case to arise in which a charge of usurious interest is disguised as the offering of a discount; but this is not such a case, as far as the evidence goes. The judgment appealed from, therefore, is correct in so far as it recognizes the gas company's claim for $600.80.

The claim of J. H. Reeves, for $329.-75, is for materials furnished and services rendered to the receiver in the operation of the oil well. Reeves claimed $433.50; but the judge found that only $329.75 of the debt was incurred by the receiver; the balance of the debt, $103.75, being for hauling done by Reeves before the receiver was appointed. The judge therefore recognized that Reeves was a preferred creditor for $329.75 and an ordinary creditor for $103.-

75. The appellant contends that all of the debt of $433.50 was incurred before the receiver was appointed, and hence that no part of it is entitled to be paid by preference. But the evidence shows, conclusively, that $329.75 of the debt was incurred by the receiver himself, after he was appointed. The judgment appealed from, in that respect, is correct.

The claim of Reeves, McNeely, and Knott arose in this way: The Standard Oil Company bought the oil from the well that was in the hands of the receiver, and withheld from the price of the oil the sum of $1,449.05, to protect the company against claims upon the price of the oil. One of the claims included in the $1,449.05 was that of Reeves, McNeely, and Knott, for $309.39, being the one sixty-fourth interest in the price of the oil which the Standard Oil Company had bought from the receiver. He sued the Standard Oil Company for the $1,449.05, in the district court in the parish of East Baton Rouge; and the company, in answer to the suit, deposited the $1,449.05 in the registry of the court, and provoked an interpleader proceeding, calling upon eighteen claimants, including Reeves, McNeely, and Knott, to assert their claims. The eighteen claimants, including Reeves, McNeely, and Knott, were cited to appear and assert their claims; and, after a hearing of the evidence in the case, the court ordered the fund to be turned over to the receiver. Reeves and McNeely have died, and their heirs are now parties to this appeal. They and Knott do not claim a lien on the $1,449.05 fund in the hands of the receiver, but claim that they

own the $309.39, by virtue of the following clause in a sublease of the 40 acres of land from which the oil was produced; viz.:

"The Assignee [meaning sublessee] further binds and obligates himself to pay to the Assignor herein [meaning the sublessors, Reeves, McNeely and Knott], in the event and only in the event that oil or gas is discovered and produced from said lands, the sum of Five Thousand and No/100 ($5,000) Dollars, out of an equal one-eighth (⅛) of the first oil produced and marketed from said land under the terms hereof, said payments to be made in equal proportions to the Assignors herein by the pipe line company or companies through whose line or lines the oil may be run and by other purchasers of oil, gas and other mineral directly to the Assignors [meaning the sublessors, Reeves, McNeely and Knott] as said oil, gas or other mineral is marketed and paid for."

It is not necessary to decide whether Reeves, McNeely, and Knott would have been entitled to have the $309.39 paid directly to them if they had made demand for it in the suit of the receiver against the Standard Oil Company in the district court in East Baton Rouge parish; nor do we express any opinion as to whether the judgment rendered by that court ordering all of the $1,449.05 paid over to the receiver might have been amended with respect to the $309.39, if Reeves, McNeely, and Knott had appealed from the judgment. The fact is that they acquiesced in the judgment, as far as the record in this case discloses. The $309.39 was not set aside by the receiver as the property of Reeves, McNeely, and

Knott, but was mingled with all of the funds held by the receiver, as in fact all of the $1,449.05 was mingled with the other funds in the hands of the receiver. Under these circumstances, Reeves, McNeely, and Knott lost ownership of the fund of $309.39 in the hands of the receiver. In the case of Posey v. Fargo, 187 La. 122, 174 So. 175, it was held that a stipulation in a sublease, similar to the stipulation which we have quoted from the sublease made by Reeves, McNeely, and Knott, was evidence only of an ordinary debt, and that the stipulation that payment should be made only out of the price of the oil produced from the well merely imposed a limitation or condition upon the obligation, and hence that the sublessor was only an ordinary creditor of the partnership in liquidation. In the case of the Tropical Printing Co. v. Union Title Guaranty Co., 180 La. 702, 157 So. 534, the court gave a review of the decisions making the distinction between the cases where a party making a collection as agent for another keeps the fund separated from his own funds, so as to be identified as belonging to the principal for whom it was collected, and the cases where the fund collected by the agent is mingled with his own funds and not accounted for. Where a fund collected by an agent for another party is kept separate and apart from the funds of the agent, so that it can be identified as belonging to the person for whom it was collected, he retains the ownership of it; but, where such a fund is mingled with the funds of the agent and cannot be identified as belonging to the person for whom it was collected, he loses the ownership of it,

and the agent merely owes the amount to his principal. Our conclusion therefore, is that W. M. Knott and the heirs of J. H. Reeves and the heirs of J. H. McNeely are only ordinary creditors of the insolvent partnership for the sum of $309.39.

The judgment appealed from is amended so as to recognize W. M. Knott and the heirs of J. H. Reeves and the heirs of J. H. McNeely as only ordinary creditors of the insolvent partnership for $309.39, and, as thus amended, the judgment homologating the account of the receiver is affirmed at the cost of the receivership.

HIGGINS, J., absent.